Nelson, J.,
delivered the opinion of the Court.
Isaac McBroom, in his life-time, recovered a judgment, in the Circuit Court of Cannon County, against the defendants, Webb & Wiley, for about two thousand dollars and costs. Execution was issued thereon to the Sheriff of said county, who collected the same before the ■return term, in the ensuing February, in Confederate Treasury notes, and, on the day of collection, paid the amount into the hands of the Clerk of said court. McBroom was a Union man, and had no confidence in that currency. It would seem, from the testimony, that he was unwilling to receive, but afraid to refuse it; that he allowed it to remain for a short time, in the Clerk’s office, and never did actually receive it into his. own hands; that he was notified, or requested, by John A. Wood, the Deputy Clerk, to go to the office and receive the notes which had been collected, but was unwilling to do so, and said he would not take it unless compelled; that the debt due him had been incurred for a valuable tract of land, and was the largest debt he had. Among others, *60 be consulted his relative, Vm. Barton, on the subject; and, without here detailing their conversation, it will suffice to state that the defendant, Young, understanding that the Confederate money was in the office, and that McBroom had refused to take it, informed Barton that “if he would receive the money from Webb & Wiley, he would take it off his hands and give his note for it, with defendant, B. L. McFerrin, as surety.” This conversation was communicated by Barton to McBroom, who said that “if they were mind to take it, it would be all right; that the note proposed was good, but that he - himself would not take the money.” In pursuance of this understanding, Young “got the money;” and, on the 11th of December, 1861, executed his note therefor, payable to McBroom, with McFerrin as his security; and McBroom executed his receipt to the Clerk. On the 3d of Septem-bér, 1862, Isaac McBroom departed this life, and complainant, having been duly appointed administrator of his estate, instituted his action on the note against Young’ & McFerrin, in the Circuit Court of Cannon. They pleaded, in substance, that the note was founded upon an illegal consideration, and that the amount therein stipulated to be paid was not recoverable. Pending the action at law, complainant filed this bill against Wiley, Webb, Young and McFerrin, presenting his case on various grounds, not necessary to be here stated, (among others, that the record of the proceeding in his case against Webb & Wiley was lost,) and praying for discovery, and specific as well as general relief. A special demurrer was filed to the bill, and sustained by the Chancellor, at October Term, 1866. From this decree, dismissing the bill without *61 prejudice, complainant prosecuted his appeal to this court, and, on 30th of January, 1867, a decree was here pronounced, in which it was declared that “it appeared to the Court, from the allegations in the bill, that the alleged satisfaction of the judgment recovered by Isaac Mc-Broom, in his life-time, against "Webb & Wiley, in the Circuit Court of Cannon county, was the real consideration of the note in controversy in this cause, and that the payment of the Confederate money was only colorable. The Court is, therefore, of the opinion, (continues the decree,) that a court of equity, looking at the substance of the transaction, would disregard the payment of Confederate money, and set up the real consideration of the note; and, in that respect, sustain the argument; (?) and the Court, being also of opinion, in view of the statements of the bill, that the remedy at law was not without embarrassment, and that the ruling of the Chancellor was erroneous,” etc., the case was remanded, to the end that the defendants shoirld be compelled to answer, etc.
After the cause was remanded, the facts were substantially found,' as hereinbefore recited, and as charged in the bill, with the exception that there is nothing in the case to implicate Webb & Wiley as conspirators with Young to compel McBroom to receive Confederate Treasury notes in payment. It is more than probable that the statement in their answer, although not evidence against Young, explains the whole transaction. They state that Young was indebted to them, in a considerable amount, for stock they had sold him; and that after the execution against them, in favor of McBroom, went into the Sheriff’s hands, they were anxious to get the money to pay it, and did get *62 the Confederate Treasury notes from Young and paid them to the Sheriff in satisfaction of the execution. The bill charges that these identical notes were borrowed by Young, in the manner above stated, immediately after their payment. Young, in his answer, insists that the two transactions were separate and distinct, but states that he does not know when he made the payment to Webb & Wiley, and that they were not present when, as he alleges, he borrowed the Confederate notes from McBroom. He admits that he was indebted to them for stock, and says he paid them Confederate money for it whenever they called for the same; that he knew nothing of their indebtedness to McBroom; and does not remember whether he made payment at the issuance of said execution, or any time thereafter; but is satisfied that, from time to time, he did pay them over the amount of the judgment. William Barton states, in his deposition, that, after he had the conversation with McBroom, in which the latter said he would not take the Confederate notes, unless compelled to do so, “he, Barton, saw defendant, Isaac Young, and had a conversation with him; that Young said he wanted some money, and told him (Barton) that there was some money in the Circuit Court Clerk’s office — Confederate money paid by Webb & Wiley, on a judgment' in favor of Isaac McBroom, which he refused to take; that he (Young) wanted money, and that if McBroom would take this money from Webb & Wiley, he would take it off his hands and give his note for it, with McFerrin as surety,” as already stated. J. P. Henderson states that he was present when Young executed his note, 11th December, 1861; that McBroom was also present; that he *63 does not remember seeing McBroom handle tbe money; and that it Avas counted by Barton, who says that he had counted it previously at the Clerk’s office.
It is manifest from the evidence of these witnesses, and Young’s statement in his ansAver, as to his own want of recollection, that some of the most material facts have escaped his memory, as might well be the case with one engaged in active business and having frequent transactions of similar character. But, upon the evidence of said Avitnesses, corroborated by other facts and circumstances in the case, we are of opinion that as McBroom never assented to the collection of his judgment in Confederate notes, or ratified its collection in any other mode than by loaning them to Young; and as Young, in all probability, received the. same money back that he had paid to Webb & Wiley, and voluntarily promised that if McBroom Avould receive it, he would take it off his hands and give his OAvn note Avith security; the Avhole transaction was, in the language of the decree upon the demurrer, “merely color-able,” and that the satisfaction of the judgment Avas the real consideration of the note in controversy. In other words, we are satisfied that, upon the special facts of this case, Young being justly indebted to Webb & Wiley, and they to McBroom, and the latter having executed a receipt for the amount of his judgment and execution at Young’s instance — the latter, in the view of a court of equity was, upón valid consideration, substituted in the place of Webb & Wiley as debtor to McBroom, and is boundin equity, and good conscience, to pay the full amount of the note executed by him to McBroom.
There is no proof in the record that the consideration *64 of the debt to Webb & Wiley was horses sold, to be used by the Confederate Army, or that McBroom loaned his money to be used in any unlawful contract or enterprise; and we cannot order the case to be tried in the Circuit Court, as insisted in the brief and arguments of defendants, with the view of investigating such alleged circumstances. Were we in doubt as to our duty in the premises, we are precluded from complying with the suggestion by the conduct of the defendants themselves, for the following entry appears to have been made of record in the Chancery Court, on 17th of February, 1868, to-wit: “In this cause, upon motion of defendant, the complainant agrees to elect to prosecute his action in this Court; and his action of debt in the Circuit Court of this county aforesaid (against) defendants Young and McFerrin, shall stand dismissed; and it is so ordered by the Court.”
The decree of the Chancellor will be reversed, and a decree pronounced here against the defendants, Young and McFerrin, his security, for the amount of principal and interest due upon the note, and the costs in this court and the court below.